PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ROBERT MADISON BROOKS, a/k/a
Pooh,
*Defendant-Appellant.*

No. 05-4602

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

VERNARD JEROME MATHIS, a/k/a Cuz,
*Defendant-Appellant.*

No. 05-4603

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

WINIFRED MORRIS SPARKS, a/k/a
Mark,
*Defendant-Appellant.*

No. 05-4604

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                    v.                                    No. 05-4605

WILLIAM THOMAS WITHERSPOON,
                    *Defendant-Appellant.*


UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                    v.                                    No. 05-4616

VERNARD JEROME SPARKS, JR., a/k/a
Fats,
                    *Defendant-Appellant.*

Appeals from the United States District Court
for the District of South Carolina, at Rock Hill.
Joseph F. Anderson, Jr., Chief District Judge.
(CR-02-1173-JFA)

Argued: November 2, 2007

Decided: May 8, 2008

Before NIEMEYER and KING, Circuit Judges, and
James A. BEATY, Jr., Chief United States District Judge
for the Middle District of North Carolina, sitting by designation.

Affirmed in part and vacated and remanded in part by published opinion. Judge King wrote the opinion, in which Judge Beaty joined. Judge Niemeyer wrote a separate opinion concurring in part and dissenting in part. Judge Beaty wrote a separate concurring opinion.

## COUNSEL

**ARGUED:** Jessica Ann Salvini, SALVINI & BENNETT, L.L.C., Greenville, South Carolina; John Dewey Elliott, Columbia, South Carolina; Russell White Templeton, Columbia, South Carolina; William Michael Duncan, AUSTIN, LEWIS & ROGERS, P.A., Columbia, South Carolina; James Perry Craig, CRAIG LAW FIRM, P.C., Columbia, South Carolina, for Appellants. Robert F. Daley, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Reginald I. Lloyd, United States Attorney, Marshall Prince, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

## OPINION

KING, Circuit Judge:

The five appellants in these consolidated appeals, Robert Brooks, Winifred Sparks ("W. Sparks"), William Witherspoon, Vernard Sparks, Jr. ("V. Sparks"), and Vernard Mathis (collectively, the "Defendants"), were each convicted by jury for offenses arising from a drug trafficking scheme in South Carolina. Specifically, the Defendants were each convicted of a single count of conspiracy to distribute less than 500 grams of cocaine and 50 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 846 (the "Count 1 crack conspiracy"); V. Sparks and W. Sparks were convicted of possession with intent to distribute 5 grams or more of crack, in violation of 21 U.S.C. § 841(a)(1) (the "Count 10 substantive offense"); and W. Sparks was also convicted of possession with intent to distribute an unspecified quantity of crack, again in violation of § 841(a)(1) (the "Count 4 substantive offense").

The Defendants, who were indicted and tried together, present multiple challenges to their convictions and sentences. In particular, Mathis and Witherspoon contend that the trial court's instructions contravened the principles of *United States v. Collins*, 415 F.3d 304 (4th Cir. 2005), by failing to instruct the jury that it was obliged, in

connection with the Count 1 crack conspiracy offense, to determine the threshold drug quantities attributable to each individual defendant on trial.[1] As explained below, we agree that the court erred in failing to give the appropriate *Collins* instruction and that, as to defendant Mathis, such error warrants relief. In so ruling, we reject the Government's post-argument contention that the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), overruled our decision in *Collins*.

The Defendants also pursue other contentions of error involving, inter alia, evidence admitted at their trial and sentencing hearings, the denial of judgment of acquittal, and the calculation of their advisory Sentencing Guidelines ranges. We reject these contentions of error and affirm the convictions and sentences of Brooks, Witherspoon, V. Sparks, and W. Sparks. We vacate Mathis's sentence on the Count 1 crack conspiracy and remand for resentencing under 21 U.S.C. § 841(b)(1)(C).

I.

A.

On March 19, 2003, a twenty-two count superseding indictment (the "Indictment") was returned in the District of South Carolina, charging the Defendants with the Count 1 crack conspiracy,[2] as well as conspiracy to use and carry firearms during and in relation to drug trafficking crimes, in violation of 18 U.S.C. § 924(o) (the "Count 2 firearms conspiracy"). These conspiracies were both alleged to have

---

[1]In *Collins*, we held, inter alia, that in order for a trial court to determine which of the three graduated penalty subsections of 21 U.S.C. § 841(b) applies to defendants convicted of a § 846 drug conspiracy, the jury must determine the threshold quantity of drugs attributable to each conspiracy defendant on trial. *See* 415 F.3d at 311-15.

[2]The Count 1 crack conspiracy alleges, in pertinent part, that the Defendants (along with others) "did knowingly and intentionally combine, conspire and agree . . . to distribute and to possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, commonly known as 'crack' cocaine . . . . All in violation of Title 21, United States Code, Section 846."

begun by at least January 1994 and to have ended in March 2003. V. Sparks and W. Sparks were charged with the Count 10 substantive offense; and W. Sparks was also charged with the Count 4 substantive offense.[3]

The Defendants pleaded not guilty and their trial commenced on July 7, 2003. At trial, the Government's evidence was, in substance, that the Defendants — four of whom were full- or half-brothers, while the fifth (Mathis) was a cousin — had participated in a major drug distribution scheme in and near Lancaster, South Carolina.[4] This scheme centered on a residence known as "The Circle," on Willow Oak Circle in Lancaster. The Circle was owned by Vernard Sparks, Sr., who was not charged in the Indictment. When law enforcement officers executed a search warrant at The Circle in August 2000, they discovered 51.3 grams of crack and several firearms. They also found $5000 in cash in a bedroom belonging to W. Sparks, who lived at The Circle. In addition to evidence relating to drug activities at The Circle, other evidence reflected that officers had, in August 1998, stopped a vehicle that W. Sparks was driving, also containing two other occupants. The officers found a .25 caliber pistol in W. Sparks's back pocket and discovered a bag containing approximately .62 grams of crack under a tire on the driver's side of the car. Because there were no tire tracks on the drugs, the officers concluded that the drugs had been thrown from the car by W. Sparks.

At the close of the prosecution's case-in-chief, the trial court granted judgment of acquittal to the Defendants on the Count 2 firearms conspiracy. Before the court instructed the jury on the remaining three charges, the Defendants objected to the instructions on the Count 1 crack conspiracy, contending that the jury was obliged to make a finding regarding the drug quantities that were attributable to

---

[3]The Defendants are only five of the fifteen defendants charged in the twenty-two count Indictment. The charges against the other defendants were independently disposed of and several of them testified at trial. The Defendants are named in Counts 1, 2, 4, and 10 only, and there is nothing before us relating to the balance of the Indictment.

[4]We recite the facts in the light most favorable to the Government, as the prevailing party at trial. *See United States v. Bursey*, 416 F.3d 301, 304 n.1 (4th Cir. 2005).

each individual conspiracy defendant.[5] The court overruled the objection, however, and instead instructed the jury to the contrary, i.e., that it was obliged to find "not the amount a single defendant may have been involved with, but rather the amount of controlled substances involved in the conspiracy as a whole." Supp. J.A. 47.[6]

The jury returned its verdict on August 6, 2003, finding the Defendants guilty of the Count 1 crack conspiracy. The verdict also found W. Sparks and V. Sparks guilty of the Count 10 substantive offense, for possession with intent to distribute 5 grams or more of crack, and W. Sparks guilty of the Count 4 substantive offense, for possession with intent to distribute an unspecified quantity of crack. The verdict form included an interrogatory relating to the Count 1 crack conspiracy, requiring the jury to complete the following by checking the box next to one of the specified drug quantities: "We unanimously find that the amount and type of drugs involved in the conspiracy as a whole were as follows . . . ." Verdict Form, August 6, 2003. In response, the jury checked the boxes corresponding to "50 grams or more" of crack and "less than 500 grams" of cocaine.[7]

[5]Although counsel for Mathis articulated this objection, he did so on behalf of all the Defendants, pursuant to an agreement that objections made by any of the Defendants applied to all unless otherwise specified. No Defendant opted out of Mathis's objection and, accordingly, it was preserved for each of them. Because *Collins* had not been decided at the time of the Defendants' trial in 2003, the objection of Mathis's counsel to the instructions was based on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The objection was premised on the principle that the court was required to instruct the jury to make individualized findings of drug quantities as to each conspiracy defendant. The objection was thus sufficient to preserve the Defendants' *Collins* contention, and the Government does not contend otherwise.

[6]Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal. Citations to "Supp. J.A. ___" refer to the Supplemental Joint Appendix.

[7]The verdict form also included an interrogatory relating to the Count 10 substantive offense. After finding W. Sparks and V. Sparks guilty of this offense, the jury was asked to determine the amount of crack that W. Sparks and V. Sparks possessed in relation thereto. For both defendants, the jury selected "5 grams or more, but less than 50 grams" of crack. Verdict Form, August 6, 2003.

## B.

The district court conducted sentencing hearings for the Defendants between May 31 and June 7, 2005, at which it made findings of fact and calculated their advisory Sentencing Guidelines ranges. In addition to criminal history determinations, the court found that: (1) Brooks was responsible for 2001 grams of crack and had possessed a firearm during the conspiracy; (2) Mathis was responsible for 3249 grams of crack and had possessed a firearm during the conspiracy; (3) W. Sparks was responsible for 194 grams of crack and had possessed a firearm during the conspiracy; (4) Witherspoon was responsible for 2200 grams of crack; and (5) V. Sparks was responsible for 1714 grams of crack and had possessed a firearm during the conspiracy. After calculating the advisory Guidelines ranges and considering the factors set forth in 18 U.S.C. § 3553(a), the court sentenced each of the Defendants, except W. Sparks, to 360 months' imprisonment. W. Sparks was sentenced to 200 months.[8] The court ordered Mathis's sentence to run consecutive to five concurrent life sentences he was already serving in South Carolina state prison. In imposing Mathis's consecutive sentence, the district court opined that "[i]t is my understanding they normally parole state inmates who are serving life sentences reasonably soon or as soon as possible if they know that they are going to go on and serve a lengthy sentence in the federal system." J.A. 704. The sentences imposed were each within the Defendants' advisory Guidelines ranges — 188 to 235 months for W. Sparks, 324 to 405 months for Witherspoon, and 360 months to life for the other defendants.

Each of the Defendants has appealed. Two of the Defendants, Mathis and Witherspoon, contend that the court contravened the principles of *United States v. Collins* by failing to have the jury determine the threshold drug quantity attributable to each Defendant on trial, in order to establish their respective statutory ranges under 21 U.S.C.

---

[8]V. Sparks's total sentence of 360 months consists of concurrent sentences of 360 months as to both the Count 1 crack conspiracy and the Count 10 substantive offense. W. Sparks's total sentence of 200 months consists of concurrent sentences of 200 months on each the Count 1 crack conspiracy and the Counts 4 and 10 substantive offenses.

§ 841(b).[9] In addition, all of the Defendants, save W. Sparks, contend that the district court violated their Sixth Amendment right to a jury trial by finding facts on drug quantity and firearms possession that led to the enhancement of their sentences, and defendants Brooks, W. Sparks, and V. Sparks contend that the court improperly enhanced their sentences based on its finding of possession of a firearm, even

---

[9]As explained further below, 21 U.S.C. § 841(b), which sets forth the penalties for § 846 conspiracy offenses and for violations of § 841(a), establishes a graduated penalty scheme, premised on the type and quantity of drugs attributable to a particular defendant. A sentence exceeding the 20 year maximum specified in § 841(b)'s default provision, § 841(b)(1)(C), may be imposed only upon a finding that the offense of conviction involved a specific threshold quantity of a listed controlled substance. There are three gradations of permissible penalties spelled out in § 841(b). Using crack as an example,

- If the offense involves 50 grams or more of crack, an individual shall be sentenced to not less than 10 years and not more than life, § 841(b)(1)(A);

- If the offense involves 5 grams or more of crack, an individual shall be sentenced to not less than 5 years and not more than 40 years, § 841(b)(1)(B); and

- Pursuant to the default provision of § 841(b), an individual who possesses with intent to distribute an unspecified quantity of crack is subject to imprisonment for up to 20 years, § 841(b)(1)(C).

As discussed further below, the threshold drug quantities in § 841(b) constitute elements of aggravated drug trafficking offenses, and a defendant charged with conspiracy to distribute 50 grams or more of crack, in violation of §§ 846 and 841(b)(1)(A), can, if the evidence warrants, be convicted of one of the lesser included offenses of conspiring to violate § 841(b)(1)(B) or (b)(1)(C). *See United States v. E.V.*, 500 F.3d 747, 750-51 (8th Cir. 2007) (noting that defendant indicted for conspiracy to distribute in excess of 1000 kilograms of marijuana, in violation of §§ 846 and 841(b)(1)(A), pleaded to lesser included offense of conspiracy to distribute 700 pounds of marijuana in violation of §§ 846 and 841(b)(1)(B)); *United States v. Martinez*, 430 F.3d 317, 340 (6th Cir. 2005) (concluding that where indictment alleged greater quantities than jury found to have been proven beyond reasonable doubt, resulting conviction was not variance or constructive amendment because defendant was "merely convicted of a lesser-included offense").

though they had been acquitted of the Count 2 firearms conspiracy; W. Sparks contends that the court erred in denying his motion for judgment of acquittal; Witherspoon contends that the court erred in permitting the jury to consider evidence of events that occurred prior to January 1994; V. Sparks contends that the court erred in permitting a witness to testify at sentencing to clarify his trial testimony; and Witherspoon and V. Sparks assert that, in connection with their 360 month sentences, the court incorrectly calculated their criminal history points. We address these contentions in turn, beginning with the *Collins* claim pursued by Mathis and Witherspoon.[10]

## II.

We first address the contention, pursued on appeal by Mathis and Witherspoon only, that *United States v. Collins*, 415 F.3d 304 (4th Cir. 2005), required the jury to "determine beyond a reasonable doubt the quantity of drugs attributable to [each defendant] individually, and not the overall conspiracy," and that the district court thus erred in failing to instruct the jury to make such determinations. Br. of Appellants 29. As a preliminary matter, although this issue was preserved as to all the Defendants, *see supra* note 5, Brooks, V. Sparks, and W. Sparks have abandoned it on appeal by failing to raise it in their opening brief.[11] Furthermore, any *Collins* error as to Witherspoon has been

---

[10]Mathis also maintains on appeal that the district court abused its discretion in designating his 360 month federal sentence to run consecutive to the five concurrent life sentences he is presently serving in the South Carolina penal system. We need not reach this issue, however, because, as explained below, we vacate his sentence in this case and remand for resentencing.

[11]In their post-argument supplemental brief, the Defendants assert that "all defendants . . . join in the exception to any sentence imposed on them secured in violation of the Sixth Amendment." Supp. Br. of Appellants 8. This assertion is insufficient to avoid our conclusion that the *Collins* contention has been abandoned on appeal by Brooks, W. Sparks, and V. Sparks. *See Yousefi v. INS*, 260 F.3d 318, 326 (4th Cir. 2001) (concluding that petitioner abandoned argument on appeal raised for the first time in reply brief by failing to raise it in opening brief); *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (concluding that claim not properly raised in appellant's opening brief is deemed abandoned).

rendered harmless by his admission on appeal that he is responsible for 50 grams or more of crack.[12] In his appellate brief, Witherspoon asserts that the "only issue as to drug weight which was before the jury was whether Witherspoon conspired to sell more than 50 grams of crack" and, accordingly, he "submits that he should only be held accountable for that amount of drugs based on the jury's verdict." Br. of Appellants 40-41. Thus, our analysis of this contention focuses only on the relief to which Mathis is entitled on the *Collins* issue.[13]

---

[12]Because the jury found that the Count 1 crack conspiracy involved less than 500 grams of cocaine (a quantity that falls within the default provision of 21 U.S.C. § 841(b)(1)(C)), we focus our analysis of the *Collins* contention on the quantity of crack (as opposed to cocaine) involved in the conspiracy and attributable to each defendant.

[13]Even if Brooks, W. Sparks, and V. Sparks had pursued a *Collins* contention on appeal, any *Collins* error as to them would have been harmless. This is so for Brooks and V. Sparks because they have conceded on appeal that they are personally responsible for 50 grams or more of crack. Brooks asserts that "the quantity of crack cocaine appropriately attributed to [him] is 50 grams, that quantity which was actually determined by the jury in this matter." Br. of Appellants 24-25. Similarly, V. Sparks concedes that the "finding of guilty by the jury of conspiracy to distribute fifty (50) grams or more of crack cocaine is the only finding relating to drug weight that can be used in calculating [his] sentence." *Id.* at 44. Additionally, because Informations were filed relating to prior convictions of Brooks and V. Sparks, their sentences of 360 months each were within the applicable enhanced maximum statutory penalty of 30 years, rendering any *Collins* error harmless. *See* 21 U.S.C. §§ 841(b)(1)(C), 851. Finally, the convictions of V. Sparks and W. Sparks on the Count 10 substantive offense of possession with intent to distribute 5 grams or more of crack places them under § 841(b)(1)(B) for statutory sentencing purposes. Their concurrent sentences of 360 months and 200 months, respectively, on each count of conviction, fall within the 5 to 40 year range provided by § 841(b)(1)(B), rendering harmless any *Collins* error as to the Count 1 crack conspiracy. *See United States v. Ellis*, 326 F.3d 593, 599-600 (4th Cir. 2003) (concluding, under plain error review, that sentence in excess of statutory maximum authorized for one count did not affect substantial rights where defendant received valid equal or longer concurrent sentences on other counts). In fact, W. Sparks's concurrent sentences of 200 months fall below the 20 year maximum in the default provision — § 841(b)(1)(C).

A.

Pursuant to 21 U.S.C. § 846, "any person who . . . conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy." The Count 1 crack conspiracy charged the Defendants under § 846 with conspiracy to violate 21 U.S.C. § 841(a)(1) (making it an offense to, inter alia, intentionally distribute or possess with intent to distribute a controlled substance). Because the object of the Count 1 crack conspiracy was a violation of § 841(a), the Defendants are, pursuant to § 846, subject to the penalties prescribed in § 841(b). As outlined above, § 841(b) creates a three-part graduated penalty scheme for drug distribution offenses, premised on the type and quantity of the drugs involved. *See supra* note 9. Accordingly, the drug quantity attributed to a particular defendant dictates the § 841(b) penalty subsection that is applicable to such defendant, and controls the statutory sentencing range to which that defendant is exposed. In 2001, our en banc Court determined in *United States v. Promise* that "specific threshold drug quantities must be treated as elements of aggravated drug trafficking offenses, rather than as mere sentencing factors." 255 F.3d 150, 156 (4th Cir. 2001) (en banc), *cert. denied*, 353 U.S. 1098 (May 28, 2002).[14]

B.

In the present case, the jury attributed 50 grams or more of crack to the Count 1 crack conspiracy as a whole, after being instructed that "the amount of controlled substances you will need to determine . . . is not the amount a single defendant may have been involved with, but rather the amount of controlled substances involved in the conspiracy as a whole." Supp. J.A. 47. Thus, absent an individualized determination of drug quantity, the verdict (attributing 50 grams or more of crack to the "conspiracy as a whole") exposed Mathis to a

---

[14]In *Promise*, Judge Wilkins explained that an "aggravated drug trafficking offense" is one that "involves a specific threshold drug quantity," which he in turn defined as those quantities of drugs a finding of which subjects a defendant to the statutory ranges contained in either § 841(b)(1)(A) or (b)(1)(B). *See* 255 F.3d at 152 n.1.

statutory maximum sentence of life, and a mandatory minimum sentence of 10 years. 21 U.S.C. § 841(b)(1)(A).

Four years thereafter, in 2005 in *Collins*, "we addressed the issue of whether a defendant found guilty of a conspiracy to violate § 841(a) should be sentenced under § 841(b) by considering the amount of drugs distributed by the entire conspiracy," or whether, on the other hand, the statutory sentencing range specified by § 841(b) depends upon the quantity of drugs attributable to the individual defendant. *See United States v. Foster*, 507 F.3d 233, 250 (4th Cir. 2007) (summarizing *Collins*).[15] The *Collins* decision ruled that a jury must utilize the principles outlined in *Pinkerton v. United States*, 328 U.S. 640 (1946), to determine the specific quantity of drugs "attributable to" each individual defendant for the purpose of setting a threshold drug quantity under § 841(b). *Collins*, 415 F.3d at 314.[16]

In *Collins*, as in this case, the defendant appealed his conviction for conspiracy to distribute 50 grams or more of crack, after the trial court failed to instruct the jury to determine the quantity of drugs attributable to each individual defendant. *See* 415 F.3d at 311-12. In evaluating the contention that such failure to instruct was erroneous, we first examined our 1993 ruling in *United States v. Irvin*, 2 F.3d 72, 77 (4th Cir. 1993), that "the most reasonable interpretation of the relevant statutory provisions [in §§ 841(b) and 846] requires a sentencing

---

[15]To the extent that Mathis and Witherspoon also contend that *Collins* requires the jury, rather than the sentencing judge, to determine, for Sentencing Guidelines purposes, drug quantities above the threshold statutory quantity, this contention is erroneous. *Collins* does not implicate the manner in which a district court calculates a defendant's advisory Sentencing Guidelines range. Rather, it simply requires a jury to determine the specific quantity of drugs "attributable to" each conspiracy defendant on trial for the purpose of establishing the applicable statutory range under § 841(b). *See infra* note 20.

[16]In *Pinkerton*, the Supreme Court examined the potential criminal liability of one conspirator for the acts of another. The Court concluded that acts in furtherance of the conspiracy are "attributable to the others for the purpose of holding them responsible for the substantive offense," when those acts are reasonably foreseen as a necessary or natural consequence of the unlawful agreement. *Pinkerton*, 328 U.S. at 647-48.

court to assess the quantity of narcotics attributable to each coconspirator by relying on the principles set forth in *Pinkerton*." Accordingly, we recognized in *Collins* that, under the *Irvin* precedent, "the subsection of § 841(b) applicable to an individual defendant is determined by a consideration of the amount of narcotics attributable to that defendant." *Collins*, 415 F.3d at 313.

When *Irvin* was decided, a trial court was obliged to find by a preponderance of the evidence the drug quantity attributable to a particular defendant in order to fix the § 841(b) threshold drug quantity. *Collins*, 415 F.3d at 313 (citing *Irvin*, 2 F.3d at 76). *Irvin*, however, was modified in 2000 by the Supreme Court's decision in *Apprendi v. New Jersey*, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Applying *Apprendi* to § 841(b), we determined in 2001, in *Promise*, that a jury, rather than a trial court, must determine the threshold drug quantity used to establish a defendant's statutory sentencing range under § 841(b). *See Promise*, 255 F.3d at 156 ("*Apprendi* dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, i.e., charged in the indictment and proved to the jury beyond a reasonable doubt."). As we recognized in *Collins*, although *Apprendi* modified the fact-finder aspect of *Irvin*, effectively replacing the words "a district court" with "the jury," and requiring proof beyond a reasonable doubt, "*Irvin*'s holding that *Pinkerton* principles should be used to determine, for sentencing purposes, the amount of narcotics attributable to any one individual in a conspiracy, remains good law." *Collins*, 415 F.3d 314. Thus, under *Collins*, a trial court is obliged to "instruct a jury to use *Pinkerton* principles" to determine the quantity of drugs attributable to each individual defendant involved in a drug conspiracy. *Id.* "In other words, in order for the statutory maximums and mandatory minimums of § 841(b) to apply in a drug conspiracy case, the jury must determine that the threshold drug amount was reasonably foreseeable to the individual defendant." *Foster*, 507 F.3d at 250-51 (finding *Collins* error where jury failed to determine individualized quantity of crack

attributable to conspiracy defendant for penalty purposes of § 841(b), but declining, on plain error review, to award relief).

Just as in *Collins* and *Foster*, the jury in this case was not asked to determine the threshold quantity of crack attributable to each individual defendant on trial, for the purpose of determining the applicable penalty subsection of § 841(b). The jury instead determined only the amount of crack attributable to the "conspiracy as a whole." Accordingly, the trial court erred in declining the request that it give an instruction requiring the jury to make the essential threshold determination of drug quantity, and thus establish the § 841(b) penalty range for each individual conspiracy defendant.[17]

## C.

The *Collins* legal principles remain sound, and, as explained below,

---

[17]With all respect to our friend Judge Niemeyer, this opinion makes no new legal pronouncements — nor purports to make any. It simply applies *Collins* as controlling precedent in this circuit. We are thus perplexed by his suggestion that the majority is wrong in blindly following *Collins*. As our court has consistently recognized, "a panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271-72 n.2 (4th Cir. 2002) (internal quotation marks omitted); *see also Collins*, 415 F.3d at 311 (same); *Richmond Med. Ctr. for Women v. Hicks*, 409 F.3d 619, 634 (4th Cir. 2005) (Niemeyer, J., dissenting) (concluding that majority "unapologetically violates the well-established rule that one panel of this court may not overrule another"), *vacated on other grounds sub nom. Herring v. Richmond Med. Ctr.*, 127 S. Ct. 2094 (2007); *McMellon v. United States*, 387 F.3d 329, 333-34 (4th Cir. 2004) (en banc) (holding that when two panel decisions conflict, earlier decision controls unless it has been overruled by subsequent en banc or Supreme Court decision); *Longworth v. Ozmint*, 377 F.3d 437, 448 n.2 (4th Cir. 2004) (concluding, in opinion authored by Judge Niemeyer, that panel was not entitled to reconsider applicable precedent decided by prior panel). In sum, we have neither misread nor misapplied *Collins*. Nor have we blindly adhered to it. With all respect, we have simply applied the *Collins* decision — controlling precedent of this Court — to the operative facts underlying this appeal.

we reject the Government's post-argument assertion that the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), renders them inoperative. In its initial briefing in this case, the Government sought to distinguish this case from *Collins* and maintained that any *Collins* error that occurred was harmless. At oral argument, the Government conceded that a *Collins* error had occurred in the trial of the Defendants, in that the court failed to instruct the jury to apply *Pinkerton* principles to determine the quantities of crack attributable to each individual defendant, for the statutory penalty purposes of § 841(b). The Government maintained, however, that we should nevertheless affirm the Defendants' sentences because the *Collins* error was harmless.[18] After an oral argument discussion concerning the possible impact of *Booker* on the *Collins* principles, the parties submitted post-argument supplemental briefs. In its post-argument submission, the Government, for the first time, espoused the view that the *Collins* principles had been overruled by *Booker*.

The thrust of the Government's post-argument contention appears to be that "*Booker* supercedes *Collins* because *Collins* was decided prior to *Booker* and did not contemplate the advisory sentencing guidelines regime set forth in *Booker* in which the district court judge is tasked with determining the amount of drugs attributable to each defendant in a drug conspiracy for sentencing purposes." Supp. Br. of Appellee 2.[19] The Government's post-argument position, however, ignores the fact that *Collins* addressed and explained how a jury is to determine the threshold quantity of drugs attributable to an individual

---

[18]At oral argument, the Government conceded not only that *Collins* error occurred, but that all Defendants may have preserved the error through Mathis's objection. The Government focused on Mathis and Witherspoon, however, contending that only those two defendants pursued the *Collins* contention on appeal (and that any error as to them was harmless). During argument, the Government also asserted that any *Collins* error as to V. Sparks and W. Sparks was harmless due to their separate convictions on the Count 10 substantive offense.

[19]We observe that the Government incorrectly asserts that *Collins* was decided prior to *Booker*. The Supreme Court decided *Booker* in January 2005 and we decided *Collins* in July 2005. *Collins* analyzed a pre-*Booker* sentence, while here, on the other hand, we are faced with the question of whether *Collins* is applicable to post-*Booker* sentences.

drug conspiracy defendant for the purpose of establishing the applicable *statutory* sentencing range under § 841(b). *Booker*, on the other hand, is solely a Sentencing Guidelines case. The *Collins* decision does not relate in any manner or way to the calculation or consideration of a defendant's Guidelines range, but instead explains and instructs how the applicable penalty subsection of § 841(b) is to be determined for an individual conspiracy defendant.

In *Booker*, the Court held that the mandatory nature of the Sentencing Guidelines contravened the Sixth Amendment's jury trial guarantee. *See* 543 U.S. at 232-36. In so ruling, the Court reaffirmed its holding in *Apprendi* that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 244. In order to remedy the Sixth Amendment defect of the Guidelines, the *Booker* Court excised the two provisions of the Sentencing Reform Act that made the Guidelines mandatory. *Id.* at 258-63 (severing and excising two provisions, 18 U.S.C. §§ 3553(b)(1) & 3742(e), that made Guidelines mandatory).

It is clear from *Booker*'s express reaffirmance of *Apprendi* that for statutory penalty purposes the *threshold* quantity of drugs continues to be a fact that a jury must find beyond a reasonable doubt as to each individual defendant. As a result, a jury is still obligated, post-*Booker*, to apply *Pinkerton* principles to determine the threshold drug quantity attributable to each individual defendant convicted under § 846, for the purpose of establishing the applicable *statutory* range under § 841(b).[20]

---

[20]Importantly, *Collins* commits to the jury the issue of threshold drug quantity for *statutory* purposes only. It does not require a jury to determine any drug quantities that may be attributable to a § 846 defendant for Sentencing Guidelines purposes. Thus, *Collins* does not impact the way defendant's Sentencing Guidelines range is either calculated or considered. Although a sentencing court is free to calculate the advisory Guidelines range using facts that it finds by a preponderance of the evidence, including individualized drug quantities, it must do so within the confines of the applicable statutory range. For example, if a properly instructed jury determines the quantity of crack attributable to a § 846

## D.

Because it was not properly instructed, this jury did not determine the statutory threshold quantities of crack attributable to each of the Defendants.[21] In the absence of a jury determination of this threshold quantity, or an admission by Mathis as to the drug quantity attributable to him, his sentence must fall within the default penalty subsection of § 841(b)(1)(C) — that is, a maximum of 20 years. *See Promise*, 255 F.3d at 156, 157 n.7. Mathis's sentence of 360 months (30 years), exceeds the 20 year maximum established by § 841(b)(1)(C). Because he was sentenced in excess of the applicable statutory range, the *Collins* error affected Mathis's substantial rights and was not harmless. *See* Fed. Rule Crim. Pro. 52(a) (providing that "[a]ny error . . . that does not affect substantial rights must be disregarded"); *see also Foster*, 507 F.3d at 251-52 (concluding that defendant's substantial rights were affected by *Collins* error where sentence exceeded 20 year statutory maximum, but declining to exercise discretion to notice error under plain error review); *Promise*, 255 F.3d 160-61 (holding that sentence in excess of authorized statutory maximum to which defendant would not otherwise be subject affects his substantial rights). Accordingly, we vacate Mathis's sentence and remand for resentencing under § 841(b)(1)(C).[22]

---

defendant to be 5 grams or more, the sentencing court would be free to find, by a preponderance of the evidence, additional drug quantities for use in determining that defendant's advisory Guidelines range. And, it would be permissible for such drug quantities to exceed the 5 grams already found by the jury. The only limitation on the court's drug quantity finding would be that the resulting sentence is circumscribed by the statutory maximum of 40 years (and minimum of 5 years), which was fixed by the jury's threshold drug quantity finding. *See* § 841(b)(1)(B); *Collins*, 415 F.3d at 314.

[21] Although the *Collins* error explained above applied to all five Defendants, the error is harmless as to Brooks, V. Sparks, W. Sparks, and Witherspoon, for the reasons spelled out *supra* note 13.

[22] Although Mathis's sentence is infirm, his conspiracy conviction is sound. The jury found Mathis guilty of the Count 1 crack conspiracy, and his guilt on this offense is not dependent on a determination of the quantity of drugs involved. *See Collins*, 415 F.3d at 314.

In so concluding, we reject the Government's contention that any *Collins* error as to Mathis is harmless because his sentence in this case, imposed to run consecutive to five concurrent state terms of life imprisonment, will never be served. Under harmless error review, the Government "bears the burden of establishing that error was harmless." *United States v. Robinson*, 460 F.3d 550, 557 (4th Cir. 2006). In imposing Mathis's consecutive sentence, the district court opined that "[i]t is my understanding they normally parole state inmates who are serving life sentences reasonably soon or as soon as possible if they know that they are going to go on and serve a lengthy sentence in the federal system." J.A. 704. The Government has not presented any evidence to demonstrate that Mathis will never serve his federal sentence. Accordingly, it has failed to meet its burden in this regard, and we are thus unable to conclude that the *Collins* error is harmless as to Mathis.

### III.

### A.

Turning to the other issues pursued in these appeals, the Defendants contend that the sentencing court's factfinding with respect to certain aspects of their sentences denied them their Sixth Amendment right to a jury trial. Witherspoon, Mathis, V. Sparks, and Brooks specifically assert that the court committed constitutional error when it attributed drug quantities to them by a preponderance of the evidence. V. Sparks, W. Sparks, and Brooks additionally contend that the court erred in applying a sentencing enhancement for possession of a firearm to the calculation of their advisory Guidelines ranges. As explained below, we reject both contentions.

### 1.

As explained above, the Supreme Court's decision in *Booker* rendered the Sentencing Guidelines advisory. *United States v. Booker*, 543 U.S. 220 (2005). In so ruling, *Booker* explicitly rejected an approach to sentencing that requires a jury to find every fact relevant to a particular sentence. As also explained heretofore, a sentencing court is entitled to find individualized drug quantities by a preponderance of the evidence, as part of its calculation of an advisory Guide-

lines range, *see supra* note 20, so long as its resulting sentence is within the relevant statutory range.

Consistent with the post-*Booker* sentencing scheme, the district court found that Brooks was individually responsible for 2001 grams of crack; Mathis for 3249 grams; Witherspoon for 2200 grams; and V. Sparks for 1714 grams. In addition, the court found that each defendant, save Witherspoon, had possessed a firearm in connection with the Count 1 crack conspiracy. After properly calculating the advisory Guidelines ranges of the Defendants on the basis of the foregoing facts, and after considering the 18 U.S.C. § 3553(a) sentencing factors, the court imposed sentences that fell within the applicable statutory ranges for Brooks, Witherspoon, V. Sparks, and W. Sparks.[23] As it turned out, the court also imposed sentences within the Defendants' advisory Guidelines ranges — 188 to 235 months for W. Sparks, 324 to 405 months for Witherspoon, and 360 months to life for the other defendants. In these circumstances, we reject the contention of these four defendants that the court violated their Sixth Amendment rights by finding drug quantities by a preponderance of the evidence during the calculation of their advisory Guidelines ranges.

2.

Brooks, W. Sparks, and V. Sparks also contend on appeal that the district court improperly enhanced by two levels their advisory Guidelines ranges for their possession of a firearm during the Count 1 crack conspiracy. *See* USSG § 2D1.1(b)(1).[24] These defendants assert that, because the court granted judgment of acquittal on the

---

[23]Brooks, Witherspoon, V. Sparks, and W. Sparks were all sentenced within their applicable statutory ranges. Mathis's sentence erroneously exceeded the applicable default statutory range (up to 20 years) under § 841(b)(1)(C), and we dispose of this issue in Part II hereof.

[24]Section 2D1.1(b)(1) provides for a two level enhancement to the offense level of certain drug offenses, "[i]f a dangerous weapon (including a firearm) was possessed." The application note corresponding to this enhancement adds that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1(b)(1) cmt. n.3.

Count 2 firearms conspiracy, it was foreclosed from finding as a sentencing fact that they had possessed a firearm in connection with the Count 1 crack conspiracy.

Due to the different standards of proof applicable to trials and sentencing proceedings, an acquittal "does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997). The fact that the trial court, rather than the jury, acquitted Brooks, W. Sparks, and V. Sparks on the Count 2 firearms conspiracy is also of no moment. At sentencing, the court was plainly entitled to consider evidence relating to firearms possession, and at that stage the prosecution was required to prove any such possession only by a preponderance of the evidence, a less formidable standard than that required for conviction. The evidence presented at trial and at the sentencing hearings of these defendants clearly supported the application of this enhancement to the calculation of their advisory Guidelines ranges. Accordingly, we also reject this contention of sentencing error.

### B.

In an appellate contention pursued by W. Sparks, he contends that the district court erred in denying his post-trial motion for judgment of acquittal on the Count 1 crack conspiracy, and on the Counts 4 and 10 substantive offenses as well. We must sustain a guilty verdict that, viewing the evidence in the light most favorable to the prosecution, is supported by "substantial evidence." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)). We have defined "substantial evidence" as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* Further, a reviewing court is not entitled to assess the credibility of witnesses, but rather "must assume that the jury resolved all contradictions . . . in favor of the Government." *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993).

W. Sparks contends that several of the prosecution witnesses acknowledged that they had never engaged in any drug trafficking

activity with him, nor did they ever observe him buying or selling drugs. Although W. Sparks may be correct as to the witnesses he specifies, he ignores the other compelling inculpatory evidence against him in the trial record, including evidence of the drugs and firearm recovered during the 1998 stop of a car he was driving, and the drugs and firearms found during the August 2000 search of The Circle. Viewing the evidence in the light most favorable to the prosecution, there was substantial evidence to support the three convictions of W. Sparks, and the court did not err in declining to award him a judgment of acquittal.

## C.

Next, Witherspoon contends, in an issue he alone pursues, that the district court erred in instructing the jury that it could consider evidence regarding events that occurred prior to January 1994, the time specified in the Indictment as the beginning of the Count 1 crack conspiracy. He asserts that, because the Indictment makes an explicit reference to January 1994, he was not on notice that evidence from the late 1980s and early 1990s might be used against him. We review a trial court's evidentiary rulings for abuse of discretion. *See United States v. Fulks*, 454 F.3d 410, 434 (4th Cir. 2006).

Under the applicable principles, the prosecution was required to prove the existence of the Count 1 crack conspiracy and Witherspoon's joinder in that conspiracy during the time frame alleged in the Indictment — and the evidence did so. Thus, this is not a case where the Government's evidence allowed a defendant to be convicted of a different conspiracy or offense than that alleged in the indictment, nor a situation where the indictment failed to put the defendant sufficiently on notice of the offense with which he was charged. *Cf. United States v. Queen*, 132 F.3d 991, 998-99 (4th Cir. 1997). Put simply, the evidence relating to conspiratorial activities prior to 1994 was admissible and properly considered by the jury, and Witherspoon was sufficiently on notice that it could be used to establish the existence of the conspiracy alleged.

Thus, it is apparent that the primary flaw in Witherspoon's contention on this point is that he misreads the Indictment. It is alleged therein that the Count 1 crack conspiracy began "*at a time unknown*

to the Grand Jury, but beginning *at least* in January 1994." J.A. 12 (emphasis added). When, as here, the date alleged in an indictment is not a substantive element of an offense, *see United States v. Kimberlin*, 18 F.3d 1156, 1159 (4th Cir. 1994), and because this Indictment alleges that the conspiracy may have begun *prior* to January 1994, there is no basis for us to conclude that the court abused its discretion in admitting this evidence. This contention is thus also rejected.

D.

Next, V. Sparks contends that the district court erred in allowing a prosecution witness to testify at his sentencing hearing to clarify an ambiguity in the witness's trial testimony relating to drug quantities. We find no abuse of discretion in the court's decision to admit this evidence for sentencing purposes. *See* USSG § 6A1.3(a); *United States v. Mabry*, 953 F.2d 127, 133 (4th Cir. 1991) ("[O]nce issues in the sentencing report are brought into dispute, both sides are then free to bring any relevant evidence to resolve the dispute at the sentencing hearing.").

E.

1.

Finally, Witherspoon and V. Sparks contend that the district court incorrectly calculated their criminal histories. First, Witherspoon asserts that he should not have received an additional criminal history point, placing him in criminal history category IV, for a 1991 conviction for malicious injury to property, because that conviction was for a "minor offense or local ordinance violation" that should have been excluded from the criminal history calculation. Br. of Appellants 42. Section 4A1.2(c) of the Sentencing Guidelines provides for the exclusion of "local ordinance violations" from a criminal history calculation, but only if those violations are not also criminal offenses under state law. Witherspoon has failed to make such a showing. Moreover, the malicious injury to property offense is not excludable as an offense similar to the other excludable offenses listed in section 4A1.2(c). *See* USSG § 4A1.2(c) (excluding, under specific circumstances, certain listed misdemeanor offenses and "offenses similar to them"). Even though Witherspoon was not sentenced to custody on

his 1991 state conviction, that offense could nonetheless be properly considered as a sentencing factor for a subsequent federal offense. *See Alabama v. Shelton*, 535 U.S. 654, 663-66 (2002); *Nichols v. United States*, 511 U.S. 738, 746-49 (1994). We are thus unable to conclude that the court improperly attributed a criminal history point to Witherspoon for his 1991 conviction.[25]

2.

V. Sparks contends that the district court improperly assigned two criminal history points to him for engaging in relevant offense conduct while on probation for another conviction. In 1994, V. Sparks was convicted in state court on charges of resisting arrest and unlawfully carrying a pistol. His sentence included a term of probation that expired on September 25, 1995. On September 6, 1995, *before* his probation expired, V. Sparks distributed crack, for which he was convicted in 1996 in state court. The district court concluded that the conduct of V. Sparks giving rise to his 1996 crack conviction in state court was relevant offense conduct to his Count 1 crack conspiracy conviction, and thus that two additional criminal history points were warranted under section 4A1.1(d) of the Guidelines.

V. Sparks asserts that the district court had no factual basis for its finding that the conduct underlying his 1996 crack conviction was relevant offense conduct, because the prosecution did not sufficiently connect the conviction conduct to the Count 1 crack conspiracy on which he was being sentenced. The court, however, heard the evidence at both trial and sentencing, and we are unable to say that it clearly erred in making the contested finding. *See United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006) (recognizing that we review for clear error trial court's factual findings on sentencing enhancement). Accordingly, we find no grounds for disturbing V. Sparks's sentence.[26]

---

[25]We further reject the contention that Witherspoon's criminal history category of IV over-represents his past criminal history.

[26]Moreover, even if we were to accept V. Sparks's claim that the 1996 conviction was not relevant conduct, any resulting error was harmless. Because the court considered the 1996 conviction as relevant offense

IV.

Pursuant to the foregoing, we affirm the convictions and sentences of Brooks, Witherspoon, V. Sparks, and W. Sparks. We vacate Mathis's sentence and remand for such resentencing proceedings as may be appropriate.

*AFFIRMED IN PART AND
VACATED AND REMANDED IN PART*

NIEMEYER, Circuit Judge, concurring in part and dissenting in part:

I concur in Part III of the majority's opinion with respect to the convictions and sentences of the defendants Brooks, W. Sparks, V. Sparks, and Witherspoon. I respectfully dissent from the majority opinion and judgment with respect to the defendant Mathis.

With respect to Mathis, the majority holds that although the jury found Mathis to be a member of a conspiracy that had agreed to distribute 50 or more grams of crack cocaine — subjecting him and every other member of the conspiracy to an elevated sentence under 21 U.S.C. § 841(b)(1)(A) of 10 years' to life imprisonment — Mathis must himself be sentenced only at the default level, the lowest level as authorized by 21 U.S.C. § 841(b)(1)(C), because the district court did not submit to the jury the task of finding the drug quantity individually attributable to Mathis to justify a higher level *as to him*. The district court sentenced Mathis as a member of the conspiracy found by the jury, and as part of the relevant conduct for sentencing purposes, found that Mathis was individually involved in the distribution of 3,249 grams of crack cocaine and that he possessed firearms. Accordingly, it sentenced him to 360 months' imprisonment. In vacating the sentence, the majority purports to apply our decision in

_____

conduct, it did not assign any criminal history points for the conviction itself. Had the conviction been considered as unrelated conduct, however, the two points for relevant conduct while on probation would not have been assigned under section 4A1.1(d), but the 1996 conviction would have been a legitimate basis for an assignment of three criminal history points. *See* USSG § 4A1.1(a).

*United States v. Collins*, 415 F.3d 304 (4th Cir. 2005), to require the jury, not the judge, to find the amount of cocaine individually attributable to Mathis in carrying out the conspiracy, even though for a conspiratorial conviction under 21 U.S.C. § 846, *no amounts* need to be attributable to Mathis or to any other member of the conspiracy. If Mathis had agreed to distribute more than 50 grams of cocaine but yet participated in no aspect of the distribution that followed, he would still be subject to the elevated sentencing level of 10 years to life, and not the low default level determined by the majority. The majority's decision can only rest on the notion that relevant conduct in sentencing must, under *Collins*, be determined by a jury.

As I demonstrate herein, the majority's opinion rests on a misreading of *Collins*, as well as flawed portions of that opinion, that makes the holding in this case incompatible with the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Booker*, 543 U.S. 220 (2005). Instead of recognizing the irreconcilability of its reading of *Collins* with *Booker*, the majority mischaracterizes *Booker* as "solely a Sentencing Guidelines case," *ante* at 16, that did not affect the statutory reasoning of *Collins*, even though both *Booker* and *Collins* actually responded to precisely the same dilemma: how to reconcile Congress' intent in regard to federal sentencing with the Sixth Amendment implication of judicial factfinding that increases the maximum sentence to which a defendant is exposed.

In addition, the majority's reading of *Collins* runs directly contrary to the Supreme Court's pronouncements of federal conspiracy law.

At bottom, the majority opinion has condemned an entirely appropriate process for convicting and sentencing a major drug dealer for conspiracy — a process that has been and is followed routinely by the federal courts every day. *See, e.g.*, *United States v. Stiger*, 413 F.3d 1185, 1192-93 (10th Cir. 2005); *United States v. Phillips*, 349 F.3d 138, 141-43 (3d Cir. 2003), *vacated and remanded on other grounds sub nom. Barbour v. United States*, 543 U.S. 1102 (2005); *United States v. Knight*, 342 F.3d 697, 710-11 (7th Cir. 2003); *United States v. Turner*, 319 F.3d 716, 722-23 (5th Cir. 2003); *Derman v. United States*, 298 F.3d 34, 42-43 (1st Cir. 2002).

I

The facts of Mathis' conviction and sentencing are straight-forward. Mathis was charged with conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846. Because conspiring to traffic in 50 grams is, under our decision in *United States v. Promise*, 255 F.3d 150, 152 n.1, 156-57 (4th Cir. 2001) (en banc), an offense different from conspiring to traffic in only a detectable amount of crack, the district court instructed the jury in this case to determine, *as an element of the offense*, whether 50 grams were "involved in the conspiracy as a whole." The district court refused, however, to give an instruction asking the jury to find quantities attributable to each individual conspirator *in carrying out the conspiracy*. The jury found Mathis guilty of the conspiracy as charged, finding that Mathis conspired to distribute 50 grams or more of crack cocaine, subjecting him, as well as every other member of the conspiracy, to a sentence of 10 years' to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A).

Then, during the sentencing proceedings, the district court found, in order to determine relevant conduct under U.S.S.G. § 1B1.3, that Mathis was individually involved in the distribution of 3,249 grams of crack cocaine. While Mathis was not required to distribute any crack cocaine in order to be subject to the statutory sentencing range of 10 years' to life imprisonment, the finding that he was involved in the distribution of 3,249 grams of crack cocaine, as well as possessed firearms, subjected him to a recommended Guidelines sentence of 360 months' to life imprisonment. The district court, exercising its discretion under 18 U.S.C. § 3553(a), then sentenced Mathis to 360 months' imprisonment — a sentence that readily fell within the 10-years-to-life sentencing range prescribed for conspiracy to distribute 50 grams or more of crack cocaine, *see* 21 U.S.C. §§ 846, 841(a), 841(b)(1)(A), as well as the 360-months-to-life sentencing range recommended by the Sentencing Guidelines.

The majority opinion, relying on its reading of *Collins*, holds that the jury had to find separately the threshold quantity of crack cocaine individually attributable to Mathis in carrying out the conspiracy for the purpose of determining the applicable range from § 841(b)(1), even though it had already found that the threshold quantity was

within the scope of his conspiratorial agreement, for which he was convicted. Because the jury did not find the amount attributable to Mathis individually, the majority's opinion would hold that Mathis can only be sentenced under § 841(b)(1)(C) to a maximum of 20 years' imprisonment, even though the jury found a conspiratorial agreement to distribute over 50 grams of crack cocaine, exposing him to a maximum life sentence. In effect, the majority's opinion purports to hold that each individual conspirator is accountable for an individual conspiratorial offense, different from the offense charged in the indictment. This holding, I suggest, misreads *Collins*, fails to apply *Promise*, and is fundamentally irreconcilable with *Booker*. Moreover, it effectively overrules Supreme Court conspiracy law on the nature of drug conspiracy liability and the penalties for that liability.

## II

I begin by demonstrating how the majority opinion thoroughly tramples well-established conspiracy law.

Mathis' criminal liability is fully described in the text of 21 U.S.C. § 846, which provides that "[a]ny person who . . . conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy." In this case, the object of the conspiracy for which Mathis was convicted was to traffic in 50 grams or more of crack cocaine, which was, as our court has characterized it, a conspiracy to commit an "aggravated" drug offense. *See Promise*, 255 F.3d at 152 n.1, 156-57. Because liability for the conspiracy was *complete* upon proof *of the conspiratorial agreement* and did not depend on how many grams of crack were attributed to Mathis individually in carrying out the conspiracy, Mathis became subject to the penalty for conspiracy to commit an aggravated drug offense *without actually committing the offense which was the object of the conspiracy. See United States v. Yearwood*, 518 F.3d 220, 227-28 (4th Cir. 2008).

The district court in this case recognized this, and instructed the jury only to find the conspiratorial conduct and the object of the conspiracy as a whole. Following the court's instructions, the jury found that the object of the conspiracy was the distribution of 50 grams or

more of crack cocaine, an aggravated drug offense imputable to *each member of the conspiracy*, subjecting each member to a sentence of 10 years' to life imprisonment under 21 U.S.C. § 841(b)(1)(A). The district court properly refused to instruct the jury to find the amount of drugs attributable to each member of the conspiracy individually in carrying out the conspiracy because it recognized the scope of the criminal conduct committed to the jury's factfinding. For purposes of finding whether Mathis was criminally liable for conspiracy, the fact that he actually distributed drugs was totally irrelevant to liability. That fact was then, and is now, only relevant to sentencing and could only be found by the sentencing judge as part of the sentencing process, not by the jury.

The Supreme Court has recognized repeatedly that overt acts are not necessary for drug conspiracy liability. *See United States v. Shabani*, 513 U.S. 10, 13-14 (1994); *see also Whitfield v. United States*, 543 U.S. 209, 212-14 (2005). As the Supreme Court stated in *Shabani*, "In order to establish a violation of 21 U.S.C. § 846, the Government need not prove the commission of any overt acts in furtherance of the conspiracy." 513 U.S. at 15. The Court explained:

> Shabani reminds us that the law does not punish criminal thoughts and contends that conspiracy without an overt act requirement violates this principle because the offense is predominantly mental in composition. The prohibition against criminal conspiracy, however, does not punish mere thought; the criminal agreement itself is the *actus reus* and has been so viewed since *Regina v. Bass*, 11 Mod. 55, 88 Eng. Rep. 881, 882 (K.B. 1705) ("[T]he very assembling together was an overt act"); see also *Iannelli v. United States*, 420 U.S. 770, 777 (1975) ("Conspiracy is an inchoate offense, the essence of which is an agreement to commit any unlawful act") (citations omitted).

*Id.* at 16.

Thus, in this case, Mathis was convicted of entering into a criminal agreement to traffic in more than 50 grams of crack cocaine, and the government need not have proved that *any* amount of cocaine was actually distributed by him or other members of the conspiracy, or

was otherwise attributable to members, for their convictions to stand. As a member so convicted, Mathis was exposed to a sentence of 10 years' to life imprisonment under § 841(b)(1)(A). His agreement alone to participate in a group that planned to distribute 50 grams or more of crack cocaine subjected him to this elevated sentence. This is because the conspiracy statute takes on as its penalty the penalty for the offense that is the object of the conspiracy, even if the object offense was never committed. *See* 21 U.S.C. § 846; *Promise*, 255 F.3d at 152 n.1, 153 n.3, 156-57.

Therefore, it is totally improper for us to require a district court to have a jury find additional "elements" of the conspiracy offense, such as specific drug amounts with which each conspirator was personally involved in carrying out the conspiracy, when deciding liability on a conspiracy charge. In this case, when the district court instructed the jury that the object of the conspiracy charged was the offense to distribute 50 grams or more of crack cocaine and that the jury had to find whether the agreement of the conspiracy was to distribute 50 grams or more of crack cocaine, that was the *only* instruction that the district court could have given.[1] What happened later in *carrying out* the conspiracy was irrelevant to criminal liability for the conspiracy itself. Only when it came time for sentencing would the court need to focus on relevant conduct, which could include what each conspirator actually did do in carrying out the conspiracy.

When the object of a § 846 conspiracy offense is, in particular, a drug trafficking offense under § 841(a), the district court must, as a result of our decision in *Promise*, instruct the jury to determine which of three object offenses is involved. As we held in *Promise* and as the majority seems to recognize, the *threshold* drug quantities specified in § 841(b)(1)(A), (B), and (C) define three separate offenses because

---

[1]Of course, this is not to suggest that the district court could not have given an instruction to the jury permitting it to find a conspiracy to commit the "lesser included" offense of a § 841(b)(1)(B) or (C) offense, rather than the § 841(b)(1)(A) offense charged. I agree with the majority on this point. *See ante* at 8 n.9. That discussion, however, is irrelevant to this case inasmuch as the jury found that the object of the conspiracy was the aggravated drug offense stated in § 841(b)(1)(A) and charged in the indictment.

the "threshold quantities" are elements of each distinct offense. *Promise*, 255 F.3d at 156-57. As we explained in *Promise*, even though "Congress intended these specific threshold quantities [in § 841(b)(1)] to be sentencing factors rather than elements of aggravated drug trafficking offenses," as a result of the Supreme Court's decision in *Apprendi*, these threshold amounts became *elements of three separate offenses*, a default offense and two "aggravated" drug trafficking offenses. *Id.* Thus, in the context of crack cocaine, the distribution of an unspecified quantity of crack cocaine would subject the defendant to a maximum term of imprisonment for 20 years, *see* 21 U.S.C. § 841(b)(1)(C); the distribution of at least 5 grams of crack cocaine would subject the defendant to a term of imprisonment for not less than 5 years but not more than 40 years, *see id.* § 841(b)(1)(B); and the distribution of at least 50 grams of crack cocaine would subject the defendant to a term of imprisonment for not less than 10 years and up to life imprisonment, *see id.* § 841(b)(1)(A).

Because the threshold amounts became elements of a drug trafficking offense, we required in *Promise* that those elements be committed to the jury when finding whether an aggravated drug trafficking offense took place. But we carefully pointed out that we were not committing to the jury a finding of all drug quantities that "could serve to increase a defendant's sentence." *Promise*, 255 F.3d at 156 n.5. "The task of identifying the amount of drugs for which the defendant should be held accountable *at sentencing [was] left to the district court* pursuant to the principles set forth in the sentencing guidelines." *Id.* at 157 n.6 (emphasis added).

Similarly, when a *conspiracy* is charged, we commit to the jury the task of determining whether the object offense was an aggravated drug offense under § 841(b)(1)(A) or (B) or a default offense under § 841(b)(1)(C). But we do not require that the jury find that the conspirator actually committed the object offense. As already explained, the offense of conspiracy is *the agreement* to participate in the object offense, whether it later was committed or not. Thus, if several defendants meet in the upper room and agree to engage in a large conspiracy to distribute 50 grams or more of crack cocaine, they have *by that agreement alone* committed an offense punishable by 10 years' to life imprisonment. And if a member of that conspiracy never performs an overt act, he nonetheless must be sentenced within the penalty range

set forth in § 841(b)(1)(A), because that object offense determines the scope of the conspiracy. Thus, every member of that conspiracy becomes subject to the same penalty range.

Contravening these well-established principles of conspiracy law, the majority purports to apply *Collins* to hold that the jury, not the judge, must find an amount of drugs *individually attributable* to a conspiracy defendant in the course of his *carrying out the conspiracy*. In other words, under the majority's application of *Collins*, a conspiracy conviction would no longer represent the imposition of criminal liability solely for the *actus reus* of entering into an illegal agreement to engage in a particular criminal enterprise. Instead, the conviction for *conspiracy* would serve almost no independent purpose at all because the jury is now required, with the majority's reading of *Collins*, to find beyond a reasonable doubt facts sufficient to support conviction for the *substantive offense*. Under the majority's holding, only conspirators to whom a threshold drug quantity can be individually attributed are exposed to the "aggravated" penalty provisions of § 841(b)(1)(A) and (B), even though *all* convicted conspirators, by definition, joined a conspiracy that had an "aggravated" substantive offense as its object.

The majority's holding is illogical, and it destroys the very foundation of conspiracy law. The majority rules that the extent of criminal liability for conspiracy turns on the performance *vel non* of substantive acts in furtherance of the conspiracy. Yet "conspiracy is a distinct offense from the completed object of the conspiracy," *Garrett v. United States*, 471 U.S. 773, 778 (1985), and a defendant convicted of conspiracy is liable for the conspiracy to the extent of the *entire scope* of the conspiracy, *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993). *See also United States v. Bayer*, 331 U.S. 532, 542 (1947) ("the agreement to do the act is distinct from the act itself"); *Yearwood*, 518 F.3d at 228 (distinguishing between "participation in the criminal act itself" and "participation in an *agreement* to perform that act"). To insist on a jury finding of drug quantity attributable to each individual defendant, notwithstanding the jury's finding of drug quantity for the object of the conspiracy as a whole, thus eliminates the elemental basis for conspiracy liability. It essentially creates individualized conspiracy convictions for each defendant, obliterating any

notion that the basis for liability is the *common agreement* to achieve the particular illegal act that is the object of the conspiracy.

In short, conspiracy liability attaches upon entering into an illegal agreement and, after *Promise*, the object of a drug conspiracy under 21 U.S.C. § 846 must be one of three offenses: (1) the base-level substantive offense under § 841(a) and § 841(b)(1)(C); (2) an "aggravated" offense under § 841(a) and § 841(b)(1)(B); or (3) a more "aggravated" offense under § 841(a) and § 841(b)(1)(A). As such, *every* member of a given conspiracy is convicted of the *same* conspiracy — i.e., the same agreement to accomplish the same object offense — and therefore is properly subject to the same statutory range of punishment, not individualized ranges, as the majority holds.

### III

In addition to leveling at their roots longstanding principles of conspiracy law, the majority applies its reading of *Collins* as controlling precedent to contradict the Supreme Court's holding in *Booker for purposes of sentencing*. It accomplishes this by simply repeating *Collins*' mistaken reliance on our earlier decision in *United States v. Irvin*, 2 F.3d 72 (4th Cir. 1993), without undertaking the necessary analysis which would show that *Collins* (1) misapplied *Irvin*, (2) misread *Promise*, and (3) ignored the existence and implications of *Booker*. As I will demonstrate, any of these three errors is sufficient to undermine the majority's reliance on *Collins*. Indeed, the particular impact of *Booker* on *Collins* requires us to abandon *Collins* in part, in order to remain in compliance with the teaching of the Supreme Court regarding federal sentencing.

Because of the layers involved, I begin in an analytical sequence with a discussion of *Irvin*, and then proceed to *Promise*, and finally to *Booker*.

### A.   Misapplying *Irvin*

First, the majority repeats *Collins*' mistake in presuming that anything in *Irvin* compels the rule that conspiracy liability is dependent upon an individual conspiracy defendant's substantive acts.

In *Irvin*, we held that in order to properly sentence defendants convicted of drug conspiracies under 21 U.S.C. §§ 846 and 841(a), the sentencing judge must make individualized assessments of relevant offense conduct "to determine the quantity of narcotics reasonably foreseeable to each coconspirator within the scope of his agreement." *Irvin*, 2 F.3d at 78. The quantity found by the district court under this approach was then used to determine both the applicable penalty range from 21 U.S.C. § 841(b) and the applicable (and then-mandatory) range of punishment under the Sentencing Guidelines. This was entirely consistent with the governing practice *at that time*, several years before the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Irvin*, we rejected the government's argument that § 846 required the district court to determine the applicable provision of § 841(b) by finding the drug quantity at the heart of the offense that was the object of the conspiracy and then applying that amount to every member of the conspiracy for purposes of sentencing. *Id.* at 75-77. The *Irvin* court based its holding on its understanding that Congress' intent in passing § 846 was "not to increase exposure for criminal punishment beyond that already available, but 'to synchronize the penalties for conspiracies and their underlying offenses . . . [by] ensur[ing] that a defendant who is charged with only conspiracy not be in a better position for sentencing than one who is charged solely with possession of the same amount of narcotics.'" *Id.* at 77 (quoting *United States v. Martinez*, 987 F.2d 920, 925 (2d Cir. 1993)) (omission and alterations in original).

A proper understanding of *Irvin*'s holding must take account of the fact that at the time it was decided, there was but a *single statutory offense* under § 841(a), regardless of drug quantity, and the question of which provision of § 841(b) applied was merely one of sentencing, not one of which offense was committed. Therefore, any defendant convicted of a substantive violation of § 841(a), or of conspiracy under § 846 to commit a substantive violation of § 841(a), was exposed, statutorily, to the full range of punishment outlined in § 841(b), from zero to life imprisonment. But as noted, the Sentencing Guidelines at the time were mandatory. The post-conviction judicial factfinding called for under that system greatly narrowed the permissible range of punishment, and the district court's factfinding under the Guidelines served to fix *both the applicable penalty range under § 841(b) and the mandatory Guidelines range. Irvin*, 2 F.3d at 78.

Admittedly, these two facts — the existence of mandatory Sentencing Guidelines and the lack of a particular provision of § 841(b) that applied as an element of the offense to the conspiracy as a whole — may well have led to substantially varying sentences among coconspirators commensurate with their level of involvement in the conspiracy and specifically with the amount of conspiratorial activity reasonably foreseeable to them. Nonetheless, this wide range of sentences for members of a single conspiracy did not violate the principles of conspiracy law because of the conceptual paradigm reigning at that time: a defendant's conviction under §§ 846 and 841(a) was for the *single offense* of conspiracy to distribute narcotics, without regard to drug quantity. Therefore, any subsequent determination of drug quantity — whether to determine the appropriate category of § 841(b) or to apply the then-mandatory Guidelines — was *wholly related to sentencing* and had no bearing whatsoever on the defendant's criminal liability for the conspiracy itself or on the nature of the conspiracy's object offense.

*Irvin* was thus concerned *only* with what facts regarding drug quantity needed to be found for sentencing *after* the jury returned an undifferentiated conviction for conspiracy — that is, a conspiracy conviction that made no findings about drug quantity. It was therefore error for the *Collins* court to have applied *Irvin*'s holding from the pre-*Apprendi* and pre-*Promise* era, when § 841(a) described a single offense and § 841(b) merely contained *sentencing* factors for the district court to consider, as if it survived the post-*Apprendi* and post-*Promise* era, when § 841(a) was found to describe *three separate and distinct offenses*, based on the determination of § 841(b) threshold drug quantity by the jury as an *element* of the offense. Once the threshold drug quantities specified in § 841(b)(1)(A), (B), and (C) became elements of three separate offenses, rather than mere sentencing factors, *Irvin* no longer controlled their proper application. Thus, *Collins* was wrong in blindly following *Irvin*, and the majority is wrong in blindly following *Collins*.

## B.   Misreading *Promise*

In addition, the majority fails to recognize that *Collins* misread *Promise* by concluding that *Promise* had not fully satisfied *Apprendi*'s requirements in the context of drug conspiracies under

§§ 846 and 841. As noted, when this court, sitting *en banc* in *Promise*, applied *Apprendi* to § 841, we transformed the § 841(b) threshold drug quantities from mere sentencing factors into elements of three separate offenses under § 841(a): (1) a "default" offense corresponding to § 841(a) and § 841(b)(1)(C); (2) an "aggravated" offense corresponding to § 841(a) and § 841(b)(1)(B); and (3) a more "aggravated" offense corresponding to § 841(a) and § 841(b)(1)(A). *See Promise*, 255 F.3d at 156-57. The threshold drug quantities found in § 841(b) thus ceased to be sentencing factors for the district court and became elements of the crime to be found by the jury. This became true also for conspiracy offenses under § 846 when a § 841(a) offense was the object of the criminal agreement. See *Promise*, 255 F.3d at 153 & n.3 (noting that Promise was convicted of conspiracy under § 846, but that § 846 takes on the same penalties as those prescribed for the object offense — here, § 841(a) and § 841(b)(1)).

Therefore, by creating three separate offenses under § 841(a) and (b) and by requiring the government to charge and prove, and the jury to find beyond a reasonable doubt, the threshold drug quantity of the conspiracy as a whole, *Promise* abrogated the portion of *Irvin* that required the sentencing judge to determine the applicability of § 841(b) on an individualized basis for each defendant. Similarly, because the conspiracy under §§ 846 and 841(a) now included as elements of the crime the threshold drug amounts specified in § 841(b), it was no longer necessary, nor even permissible, for the judge to determine the statutory range of punishment. Indeed, it was precisely the sort of *judicial* determination of which statutory range of penalty applied as called for in *Irvin*, that the *Apprendi* court held unconstitutional under the Sixth Amendment. *See Apprendi*, 530 U.S. at 485-90. Under the *Promise* scheme, the jury necessarily identified the proper range of punishment for all conspirators by virtue of its finding of a threshold drug quantity as part of its verdict. In other words, where *Irvin* required the sentencing judge to make findings of drug quantity to satisfy both § 841(b) and the Sentencing Guidelines, *Promise* removed the § 841(b) finding from the judge and gave it to the jury to find as an element of the offense. The sentencing judge was left to make only the findings necessary to apply the Sentencing Guidelines within the § 841(b) statutory range authorized by the jury's verdict.

*Collins* failed to recognize this necessary consequence of *Promise*. Instead, it located language in *Irvin* instructing the "district court to

determine the accountability of each coconspirator for each object offense and the quantity of narcotics involved in each object offense," *Irvin*, 2 F.3d at 76, and concluded that *Apprendi* required this language to be "altered" by replacing "a district court" with "the jury" and inserting "beyond a reasonable doubt" as the burden of proof. *Collins*, 415 F.3d at 313-14. The *Collins* court reached this result apparently without comprehending the significance of our holding in *Promise*, which had already taken the § 841(b) determination away from the district court as a sentencing matter and had given it to the jury as an element of the offense. *Compare id.* at 313 n.5 (acknowledging *Promise*'s holding that the jury must find "the specific threshold quantity . . . as an *element* of an aggravated drug trafficking offense" (emphasis added) (internal quotation marks omitted)) *with id.* at 314 (holding nonetheless that the jury must make individualized § 841(b) findings "for sentencing purposes").

There was thus no reason for *Collins* to reach this question, let alone to hold in the manner that it did. Any Sixth Amendment problem had already been answered by our full court sitting *en banc* in *Promise*, and any language from *Irvin* instructing the district court to make the findings necessary to choose the proper statutory range under § 841(b) had already been nullified by *Promise*'s transformation of the threshold drug quantities in § 841(b) into elements of three separate offenses. Quite simply, there was no error left for *Collins* to find or to correct.

Nor was it left open to *Collins* to decide whether the jury's finding of a threshold drug quantity in a conspiracy case under § 846 should focus on the conspiracy as a whole or the amount attributable to each individual defendant. We recognized in *Promise*, consistent with both the language of § 846 and the principles of conspiracy law described above, that the penalties for a conspiracy under § 846 are the same as those for the offense that is the object of the conspiracy. *See* 21 U.S.C. § 846; *Promise*, 255 F.3d at 153 n.3. In *Irvin*'s day, the penalty for the single object offense described under § 841(a) was unrestricted by the jury's verdict, and it thus made sense for the district court's individualized sentencing determination to control the selection of the applicable provision of § 841(b) as well as the then-mandatory Guidelines range. But upon the creation in *Promise* of three distinct offenses under § 841(a), it became necessary for the jury

to find the quantity attributable to the *object offense*, that is, to the *conspiracy as a whole*, in order for the aggravated penalty provisions of § 841(b) to apply and for the concept of a conspiracy as punishing only the entering into of a criminal agreement to retain any validity. If the jury were permitted or required to make individualized findings of threshold drug quantity, the existence of a conspiratorial agreement would become irrelevant. Thus, to remain faithful to both *Promise* and conspiracy law generally, see *Whitfield*, 543 U.S. at 212-14; *Shabani*, 513 U.S. at 15-16; *Yearwood*, 518 F.3d at 225-30, the jury's threshold drug quantity determination in a conspiracy case must make reference to the conspiracy *as a whole*.

Therefore, when the majority in this case explains that "we recognized in *Collins* that, under the *Irvin* precedent, 'the subsection of § 841(b) applicable to an individual defendant is determined by a consideration of the amount of narcotics attributable to that defendant,'" *ante* at 13 (quoting *Collins*, 415 F.3d at 313), it repeats *Collins*' error in failing to recognize that *Promise* had already altered the *Irvin* precedent on precisely this point. When the determination of which provision of § 841(b) applied to an individual defendant was part of the *sentencing* process, it made sense to apply *sentencing* principles, which at the time of *Irvin* (and continuing today) were based on relevant offense conduct individually attributable to the defendant. *See Irvin*, 2 F.3d at 73-74 & n.2; U.S.S.G. § 1B1.3. But when *Promise* shifted the § 841(b) threshold drug-quantity determination to the jury as an additional element of the conspiracy offense, it required the government to charge and prove, and the jury to find beyond a reasonable doubt, that the *threshold* drug quantity was an element of the object offense, subjecting each member of the conspiracy — i.e., each defendant who joined the agreement to distribute 50 grams of crack — to the same statutory range of penalties.

Thus, in order to convict a conspiracy defendant of agreeing to distribute drugs at a level that constitutes an "aggravated" offense, the jury is required to find that the defendant knowingly joined the agreement and that the agreement involved the distribution of the threshold quantity of drugs specified in § 841(b)(1). Such a finding by the jury is all that is necessary to expose *each and every member* of the conspiracy to the "aggravated" statutory penalty range. What the member of the conspiracy actually did in carrying out the conspiracy is rele-

vant only to calculate the advisory Sentencing Guidelines range and to determine the appropriate sentence within the § 841(b)(1) statutory range.

## C.   Ignoring *Booker*

The majority recognizes, as did *Collins* itself, that the principles of relevant conduct and reasonable foreseeability must still be applied to determine the precise amount of drugs attributable to a defendant *for sentencing purposes*. *See ante* at 13; *Collins*, 415 F.3d at 314. But the majority errs, as did *Collins* before it, when it presumes that this determination, *for sentencing purposes*, must be made by the jury rather than the sentencing judge. As just explained, the jury fulfills its duty under the Sixth Amendment when it finds beyond a reasonable doubt that a defendant knowingly entered into a criminal agreement to achieve an object offense involving a threshold drug quantity. Such a finding is both necessary and sufficient to establish the applicable provision of § 841(b) as the governing statutory range of punishment for that defendant. And once the statutory range of punishment is fixed by the jury's verdict, no further factfinding by the jury is necessary for sentencing purposes. Therefore, *Collins* was wrong, and the majority is wrong, to require more.

That this is true is conclusively demonstrated by the Supreme Court's opinion in *United States v. Booker*, 543 U.S. 220 (2005). There, the Supreme Court faced the question of how to resolve the Sixth Amendment problems created by the federal sentencing scheme intended by Congress, which relied heavily on judicial factfinding to increase uniformity of sentencing and ensure similar sentences for similar conduct by similarly situated defendants. *See Booker*, 543 U.S. at 246-49. We faced precisely the same question in *Collins*. *See Collins*, 415 F.3d at 313-14 (reexamining *Irvin* in light of *Apprendi*'s application of the Sixth Amendment to statutory "sentencing factors" like § 841(b)); *Irvin*, 2 F.3d at 77 (explaining that Congress' intent in passing § 846 was "to synchronize the penalties for conspiracies and their underlying offenses" (internal quotation marks omitted)). As in *Booker*, the question in *Collins* was whether and how to modify federal sentencing practice, which encompassed both § 846 and the Sentencing Guidelines, to comply with the demands of the Sixth

Amendment, as elucidated in *Jones v. United States*, 526 U.S. 227 (1999), *Apprendi*, and *Blakely v. Washington*, 542 U.S. 296 (2004).

The Supreme Court's solution in *Booker* was to make the Guidelines advisory and *return factfinding for sentencing purposes from the jury to the sentencing judge*. The Court accomplished this by striking down the provisions making the Guidelines mandatory. *Booker*, 543 U.S. at 245. As a result, the maximum sentence was no longer fixed by *mandatory* Guidelines, but by statute. Even so, the Court recognized that the Sixth Amendment required that any fact necessary to justify the *statutory maximum* would still have to be submitted to the jury. But within the statutory maximum justified by jury factfinding, it returned sentencing factfinding to the sentencing judge to enable the judge to exercise discretion in selecting the appropriate sentence. *Id.* at 259-60.

The holding in *Booker* was fully consistent with our circuit's practices following *Promise*. Under our practices as fixed by *Promise*, the government was required to charge and prove, and the jury was required to find beyond a reasonable doubt, the threshold drug quantity that formed an element of the § 841(a) object offense for any defendant facing conspiracy charges under § 846. *Promise*, 255 F.3d at 156-57. The *jury's* factfinding thus established a statutory range, and the sentencing judge then found any additional facts necessary to determine the appropriate sentence within that range. Because that sentencing factfinding focused on the separate *relevant conduct* of each member of the conspiracy, *see* U.S.S.G. § 1B1.3, the sentencing judge could determine a different sentence for each member — but always within the statutory range determined by the jury. *See Promise*, 255 F.3d at 156 n.5 (emphasizing that "[w]e do not hold that 'all facts that could serve to increase a defendant's sentence must be found by the jury beyond a reasonable doubt'" and clarifying that once the jury's findings establish the maximum statutory penalty, "a fact . . . that may increase the actual sentence imposed *within* that maximum is not subject to the same requirements" as the elements found by the jury); *id.* at 157 n.6 (restricting the jury's role to "determin[ing] whether an offense involved a specific threshold drug quantity" and stating that "[t]he task of identifying the amount of drugs for which the defendant should be held accountable at sentencing is left to the district court pursuant to the principles set forth in the sentenc-

ing guidelines"). *Booker* prescribed precisely the same procedure, altered only to reflect the fact that the Guidelines are now "effectively advisory." *Booker*, 543 U.S. at 245.

It is thus inescapable that the holding in *Booker* is inconsistent with the rule we announced in *Collins*, whereby the district court is required to disregard the jury's finding of the threshold drug quantity applicable to the conspiracy *as a whole* and instead must relinquish to the jury its role as factfinder of relevant offense conduct for sentencing purposes. *See Collins*, 415 F.3d at 313 (noting that the district court in that case "erred by not issuing a further instruction [to the jury] relating to the factual predicate necessary *for sentencing*" (emphasis added)); *id.* at 314 (requiring the jury to determine "the appropriate *sentence* under § 841(b)" (emphasis added)); *id.* (noting "the district court's failure to issue appropriate jury instructions concerning the facts necessary to determine Collins' *sentence*" (emphasis added)). Indeed, the Supreme Court considered adopting a regime where all facts necessary to determine a sentence would be submitted to the jury, analogous to our holding in *Collins* that the facts necessary to determine an individual defendant's sentence under § 846 must be submitted to the jury. But the Supreme Court rejected that option and thus effectively overruled *Collins*. As the Court explained:

> One approach, that of Justice STEVENS' dissent, would retain the Sentencing Act (and the Guidelines) as written, but would engraft onto the existing system today's Sixth Amendment "jury trial" requirement. The addition would change the Guidelines by preventing the sentencing court from increasing a sentence on the basis of a fact that the jury did not find (or that the offender did not admit).

> The other approach, *which we now adopt*, would (through severance and excision of two provisions) make the Guidelines system advisory while maintaining a strong connection between the sentence imposed and the offender's real conduct — a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve.

*Booker*, 543 U.S. at 246 (emphasis added); *see also id.* at 249-58 (providing numerous reasons why Justice Stevens' proposed *Collins*-

type remedy was incompatible with Congress' intent for federal sentencing).

Justice Stevens argued, in dissent, for a continuation of the regime that we had, in effect, adopted in *Collins*, saying, "I would simply allow the Government to continue doing what it has done since this Court handed down *Blakely — prove any fact that is required to increase a defendant's sentence under the Guidelines to a jury* beyond a reasonable doubt." *Booker*, 543 U.S. at 284-85 (Stevens, J., dissenting) (emphasis added); *cf. Collins*, 415 F.3d at 313-14 (requiring the jury to find "the facts necessary to determine Collins' sentence" under §§ 846 and 841). Despite Justice Stevens' arguments, however, the Court adopted an approach that made the Guidelines advisory and *returned sentencing factfinding to the district court. Booker*, 543 U.S. at 246. And in rejecting a jury factfinding scheme for sentencing issues, the *Booker* court also rejected the very scheme that we had adopted in *Collins* for § 846 sentencings. As the Court explained in *Booker*:

> To engraft the Court's constitutional requirement onto the sentencing statutes . . . would destroy the system [intended by Congress]. It would prevent a judge from relying upon a presentence report for factual information, relevant to sentencing, uncovered after the trial. In doing so, it would, even compared to pre-Guidelines sentencing, weaken the tie between a sentence and an offender's real conduct. It would thereby undermine the sentencing statute's basic aim of ensuring similar sentences for those who have committed similar crimes in similar ways.

*Booker*, 543 U.S. at 252. Thus, a majority of the Supreme Court opted to restore *judicial factfinding for sentencing* within a statutory range properly determined by the jury, in order to remain faithful to Congress' overriding intent to "maintain[ ] a strong connection between the sentence imposed and the offender's real conduct." *Id.* at 246.

The very same concern — maintenance of a connection between punishment received and the defendant's real conduct — animated our original holding in *Irvin. See Irvin*, 2 F.3d at 78. When *Promise* changed the definition of the crime of conspiracy to distribute drugs,

255 F.3d at 156-57, it necessarily changed the calculus involved in maintaining that connection and determining the appropriate sentence for defendants convicted of that crime. *Collins* proposed one answer to this changed calculus: it set aside the notion that each defendant was convicted of participation in a common agreement, and instead required the jury to make factual findings regarding substantive acts in order to make individualized statutory sentencing range determinations for those convicted of precisely the same conspiracy crime. *Collins*, 415 F.3d at 313-14. Manifestly, this result was in harmony with neither *Booker*, nor *Promise*, nor *Irvin*.

*Booker*, meanwhile, rejected the *Collins* approach of requiring additional jury factfinding of relevant conduct for sentencing, and instead required the jury to find only the facts necessary to establish the applicable *statutory* range, which, for § 846 drug conspiracies, is satisfied when the jury determines the threshold drug quantity of the conspiracy's § 841 object offense. *See Booker*, 543 U.S. at 228, 267 (noting that in the companion case, Fanfan was indicted for and convicted of a conspiracy under §§ 846, 841(a)(1) and 841(b)(1)(B), which entitled the government to seek resentencing under the advisory Guidelines in accordance with the Court's remedial scheme); *see also Kimbrough v. United States*, 128 S. Ct. 558, 564 n.1 (2007) (noting that for Sixth Amendment purposes, the "statutory range" for possession and conspiracy offenses is the same); *Promise*, 255 F.3d at 156-57 (requiring the government to charge in the indictment and the jury to find beyond a reasonable doubt the specific threshold drug quantity in § 841(b) to convict a defendant of "aggravated" conspiracy and impose a higher statutory sentence).

Thus, there can be no doubt that since *Booker*, *Collins* is entirely out of step with the Supreme Court's view of federal sentencing policy, as well as its view of Congress' intent with regard to federal sentencing. *Collins* requires the jury to find facts for sentencing purposes, *see* 415 F.3d at 313-14, despite *Booker*'s clear holding that such factfinding is within the purview of the district court, *see* 543 U.S. at 245-46, 259-60. Moreover, *Collins* leads to widely disparate sentences for the same underlying drug conspiracy crime, because it requires the application of § 841(b) to be uniquely tailored to each individual defendant, despite the fact that the threshold quantity of § 841(b) is now an element of the conspiracy offense *common to each defen-*

*dant's conviction by the jury*. This uncoupling of the defendant's sentence from his conviction violates *Booker*'s clear instruction to honor Congress' desire to maintain a connection between what the defendant did — i.e., agree to commit an aggravated § 841(a) drug-distribution crime — and how the defendant is sentenced. *Booker*, 543 U.S. at 250-52, 264.

The facts of this case could not make the point more clearly. Mathis was a ringleader of a large, long-term conspiracy involved in distributing thousands of grams of crack cocaine. Yet, because of purported *Collins* error, Mathis will now be sentenced at the default level of § 841(b)(1)(C), far below the sentence of most of his coconspirators, even though the jury found beyond a reasonable doubt that they all — Mathis included — joined *the same conspiracy* to traffic in drugs at the aggravated drug offense level of § 841(b)(1)(A), and even though the district court properly found as relevant sentencing facts that Mathis was responsible for distributing more crack than any of his coconspirators — more than 3,200 grams. Without question, this perverse approach most assuredly does not "ensur[e] similar sentences for those who have committed similar crimes in similar ways," *Booker*, 543 U.S. at 252, nor does it "ensur[e] that a defendant who is charged with only conspiracy not be in a better position for sentencing than one who is charged solely with possession," *Irvin*, 2 F.3d at 77 (internal quotation marks omitted).

For all these reasons, I would adhere to this court's post-*Promise*, pre-*Collins* approach, modified as necessary after *Booker* and its progeny. Now, post-*Booker*, when applying its principles to drug conspiracy cases brought under 21 U.S.C. §§ 846 and 841, the indictment must charge and the government must prove to the jury a conspiratorial agreement to distribute the threshold quantity of drugs specified in 21 U.S.C. § 841(b)(1)(A) or (B) if it wishes to convict the defendant of the more serious offenses represented by the enhanced sentences provided by those subsections. But the government need not charge or prove to the jury, and the jury need not find, any drug quantities actually attributable to any conspiracy defendant, either for purposes of conviction or for sentencing. Judicial factfinding of relevant conduct, including individually attributable drug quantity, by a preponderance of the evidence remains appropriate post-*Booker* to sentence a convicted conspiracy defendant under the now-advisory

Guidelines and within the statutory range authorized by the jury's verdict.

IV

In this case, the defendants were charged with conspiracy "to distribute and to possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, commonly known as 'crack cocaine,'" in violation of 21 U.S.C. §§ 846 and 841(a)(1). The jury returned a verdict finding them guilty of the offense, and finding explicitly that they were participants in a conspiracy involving 50 grams or more of crack cocaine. With this finding by the jury, the defendants as members of the conspiracy were convicted of an offense that included a statutory sentencing range of 10 years' to life imprisonment, as provided in 21 U.S.C. § 841(b)(1)(A). Thus, under *Booker*, the sentencing judge had discretion to sentence each defendant, including Mathis, in the statutory range of 10 years' to life imprisonment.

At the sentencing hearing, the district judge was authorized, under the *Booker* scheme of sentencing, to find the facts necessary to make an appropriate calculation of the sentence recommended by the Sentencing Guidelines and to exercise discretion in selecting a sentence within the statutory range that appropriately accomplished the goals of 18 U.S.C. § 3553(a)(2). *See Kimbrough*, 128 S. Ct. at 570, 574; *Gall v. United States*, 128 S. Ct. 586, 596-97 (2007). Consistent with this post-*Booker* sentencing scheme, the district court found that Mathis was individually responsible for the distribution of 3,249 grams of crack cocaine and that he possessed firearms in connection with the conspiratorial activity. After properly calculating the recommended Sentencing Guidelines range based on these facts and considering the § 3553(a) factors, the district court imposed a 360-month term of imprisonment, which fell within the statutory range authorized by the jury's factfinding — 10 years' to life imprisonment — as well as within the Sentencing Guidelines' recommended range of 360 months' to life imprisonment.

The entire procedure before the district court was fully consistent with the Sixth Amendment, with Supreme Court precedent, with stat-

utory requirements, with congressional intent, and with our own precedents properly applied. There simply was no error.[2]

I accordingly would reject Mathis' argument that the district court violated his Sixth Amendment rights by finding sentencing facts, and I would further conclude that *Collins* is at least in part incompatible with both our *en banc* opinion in *Promise* and the Supreme Court's opinion in *Booker*, and therefore should, to that extent, be disregarded as no longer applicable or controlling law in our circuit. Although I believe that our circuit precedent does not prevent this panel from recognizing that this portion of *Collins* is defunct,[3] the majority has elected not to do so.

---

[2]The very phrase "*Collins* error" is a misnomer, and our cases that have reviewed *Collins* claims under the plain error standard ought properly to have disposed of such claims at the first step of that review. Notably, in the only published decision of our court — until today — to analyze a claim of "*Collins* error," we acknowledged that *Collins* renders us an outlier among the circuits. *United States v. Foster*, 507 F.3d 233, 250-51 & n.12 (4th Cir. 2007). Further, we declined to recognize the so-called "error," noting that "if we disturbed Foster's sentence on the drug conspiracy count, we would seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Id.* at 252. The majority's flawed reliance on *Collins* in this case similarly threatens the fairness, integrity, and public reputation of judicial proceedings, not only because the drug quantity evidence against Mathis was overwhelming, but also because the district court did nothing wrong.

[3]We of course follow the principle that a "decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." *Etheridge v. Norfolk & W. Ry. Co.*, 9 F.3d 1087, 1090 (4th Cir. 1993) (internal quotation marks omitted). But *Collins* is not protected by this principle and therefore has little precedential power on this issue. *See McMellon v. United States*, 387 F.3d 329, 332-33 (4th Cir. 2004). In addition, *Collins* is inconsistent with *Booker*, a "superseding contrary decision" by the Supreme Court, and we are obliged to follow the Supreme Court's opinions where they conflict with our own.

I am not troubled by the fact that *Booker* predated *Collins* for three reasons. *First*, a Supreme Court decision need not be "subsequent" to a panel decision in order to "supersed[e]" it, as both common sense and the

I would, accordingly, affirm.

BEATY, Chief District Judge, concurring:

I concur in the majority opinion in this case as to Parts I, III, and IV. I also concur in the majority opinion with respect to Part II to the extent that it simply applies this court's decision in *United States v. Collins*, 415 F.3d 304 (4th Cir. 2005), to the facts of the case before us. I write separately to note that it is my position that the decision in *Collins* is the law of the circuit and is binding on other panels because it has not been overruled by a subsequent *en banc* opinion of this court or a superseding contrary decision of the Supreme Court. *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (holding that one panel cannot overrule a decision issued by another panel "unless the prior opinion has been overruled by an intervening opinion from this court sitting *en banc* or the Supreme Court"). The Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), does not serve in this instance as a "superseding contrary decision," since *Collins* was actually decided several months *after Booker*, and the court in *Collins* was aware of *Booker*, cited *Booker*, and found it unnecessary to reach any additional errors alleged under *Booker*. *See Collins*, 415 F.3d at 306 n.1; *see also United States v. Foster*, 507 F.3d 233, 249-52 (4th Cir. 2007) (applying the rule set out in *Collins*, without any indication that *Collins* could have been superceded by the Supreme Court's pre-*Collins* decision in *Booker*).

To the extent that the dissenting opinion in this case criticizes the reasoning of the majority opinion, those criticisms are, in my view, criticisms of the decision in *Collins* itself rather than its application here. Despite the dissent's fundamental disagreement with *Collins*, however, *Collins* is currently the law of this circuit. As such, I conclude simply that *Collins* is binding authority in this case. However,

---

plain language of *Etheridge* indicate. *Second*, *Collins* itself expressly disclaimed any discussion or application of *Booker* in its analysis, *see* 415 F.3d at 306 n.1, and in fact did not mention *Booker* at all in its discussion of the drug quantity sentencing issue. *Third*, no published decision of this court — until today — has purported to examine *Collins* in light of *Booker* and conclude that the latter did not supersede the former.

I respectfully decline to join any debate regarding the correctness of *Collins* itself, and instead leave any reconsideration of *Collins* to the court sitting *en banc*.